**IN THE COURT OF APPEALS OF IOWA**

No. 22-1559
Filed March 29, 2023

**IN THE INTEREST OF M.R., G.R., J.P., B.R., E.R., and A.M.,**
**Minor Children,**

**K.H., Mother,**
    Appellant,

**O.R., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, District

Associate Judge.

A mother and father separately appeal the termination of their parental

rights. **AFFIRMED ON BOTH APPEALS.**

Colin McCormack of Van Cleaf & McCormack Law Firm, LLP, Des Moines,

for appellant mother.

Emily DeRonde of DeRonde Law Firm, PLLC, Johnston, for appellant

father.

Brenna Bird, Attorney General, and Ellen Ramsey-Kacena (until

withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

ConGarry Williams, Des Moines, attorney and guardian ad litem for minor

children.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BOWER, Chief Judge.**

K.H. is the mother of six children born between 2007 and 2017: A.M., J.P., M.R., G.R., E.R., and B.R.  O.R. is the father of two of the children, E.R. and B.R.[1] Both parents separately appeal the termination of their parental rights.  We affirm on both appeals.

**I. Background Facts & Proceedings.**

The family was involved with the department of health and human services (DHHS) and the juvenile court starting in 2016 due to the mother's mental-health difficulties and the physical abuse of at least one of the children.  The children were removed for a period of time but returned to the mother in October 2017, and the cases closed in 2018.

In April 2021, it was reported O.R. was sexually abusing or attempting to sexually abuse at least three of the older children.  One child attempted suicide. The mother told the children and DHHS they were lying, and despite agreeing to keep O.R. away from the older children, she allowed him in her home and took the children to a hotel with him.  The children were removed from the home pursuant to a safety plan.  On May 11, the court ordered the temporary removal of the children, and petitions to adjudicate each child as a child in need of assistance (CINA) were filed.

A.M., M.R., and G.R. were placed in their fathers' custody and care.  J.P., E.R., and B.R. went to stay with their daycare provider for a short time.   Later J.P.

---

[1] The parental rights of the fathers of the four older children are not at issue here.

went to stay with her father, and the youngest two were placed with the maternal grandmother. Three of the children ultimately were placed in foster care.

During the first year of the juvenile court proceedings, the mother did not have many positive interactions with the children. She tried to place the children between her and DHHS, manipulating the children and their caretakers and lashing out at the children in person and via phone messages. During a Christmas Day visit with the children, after an argument with the maternal grandmother, the mother threatened to commit suicide because the children didn't want to be with her, but later that day she asked DHHS for an overnight visit. She told one child she was not part of the family anymore. Several of the children reported not wanting to see their mother or return to her custody. As the case progressed, the family support service reports noted the mother was interacting more with the children during her visits.

O.R. engaged with E.R. and B.R. during his supervised visits and had regular phone calls with them. In April 2022, the children's supervised visits with their father were moved to his home; B.R. began having outbursts and behavioral issues, and E.R. refused to go to the visits. The visits were returned to public places.

The mother attended therapy as recommended but does not appear to have been open to addressing her issues. When one therapist tried to hold her accountable for how she spoke to the children, the mother stopped going because she felt "attacked." The mother completed a psychosocial evaluation in the fall of 2021 but told her therapist and the court she thought a lot of it was not true. She

started seeing a new therapist in February 2022,[2] but she did not share information about the most serious abuse inflicted on the children or her own behaviors, preventing the opportunity to process and address the changes needed.

O.R. attended therapy for a time but denied all responsibility for the sexual abuse. His therapist indicated therapy was unlikely to help without goals for treatment relating to the offenses. In January 2022, O.R. underwent a psychosexual evaluation, which strongly recommended he not be alone with any minor child and attend regular therapy to address his inability to take responsibility for any of his actions. He has been unable to find a new therapist.

The juvenile court terminated the mother's rights to all six children under Iowa Code section 232.116(1)(d) and (i) (2022), and with respect to M.R. G.R., J.P., B.R., and E.R. under 232.116(1)(f).[3] The father's parental rights to E.R. and B.R. were terminated under section 232.116(d), (f), and (i). Each parent separately appeals.

## II. Standard of Review.

"We review proceedings terminating parental rights de novo. We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (internal citations and quotation marks omitted).

---

[2] The mother's new therapist is still completing the supervised experience necessary before she can obtain her license. DHHS asked the mother to find a therapist with licensure, but she remained with her current therapist.

[3] The court noted A.M. was never removed from the mother's custody because she primarily lived with her father under a bridge order from the prior CINA.

**III. Analysis.**

> We use a three-step analysis to review termination of parental rights. First, we "determine whether any ground for termination under section 232.116(1) has been established." If we determine "that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." Finally, if we conclude the statutory best-interest framework supports termination, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."

*In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (quoting *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016)).

On appeal, each parent challenges all three grounds for termination. The father also contests the court's best-interests findings. Neither parent asserts the court should have applied an exception to termination under section 232.116(3).

*Grounds for termination.* We only need to find termination appropriate under one of the sections used by the juvenile court to affirm. *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014).

Under Iowa Code section 232.116(1)(d), the State must establish two elements:

> (1) The court has previously adjudicated the child to be a [CINA] after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a [CINA] after such a finding. This paragraph shall not be construed to require that a finding of sexual abuse or neglect requires a finding of a nonaccidental physical injury.
> (2) Subsequent to the [CINA] adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Both parents concede the first element—that each child or a sibling has been adjudicated CINA after a finding of physical or sexual abuse or neglect. Both parents argue the State did not establish the circumstances leading to the adjudication continue to exist or cannot be corrected by additional services.

The mother asserts she has ended the relationship with O.R., he will not have further exposure to the children, and the absence of the abuser as well as her new awareness of the signs of abuse mean they would no longer be at risk. The juvenile court ruled:

> [The mother] has not addressed her mental health issues that caused her to disbelieve her children's reports of sexual abuse or to lash out at them when they challenge her. [She] has had a pattern of saying that her children are liars. She said this after she hit [one child] over the head and then told the children to lie about it, leading to the first CINA. She said it when the children reported sexual abuse and she said that [another child]'s act of trying to kill herself was just to get attention and not genuine. There is not enough evidence that [the mother] has addressed the source of her behavior and changed it. The children would continue to be in the same danger if returned to [the mother] today as when they were removed.

The mother's testimony indicated she was finally beginning to address her attitude and behavior towards the children. However, the juvenile court noted "she has only scratched the surface of working on her mental health issues and how her behaviors impact her children's physical and emotional safety." After a year of services, a review of the record reveals her attempt to change did not begin until after the State filed the petitions to terminate her parental rights. The mother has been struggling to appropriately parent these children for many years, and they have suffered physical and sexual abuse while she accused them of lying and lashed out at them for telling the truth and cooperating with DHHS. She has "fixed" her behavior before but then has fallen into new behaviors at least as harmful to

the children.  "Children simply cannot wait for responsible parenting. . . . [Parenting] must be constant, responsible, and reliable."  *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990).  We agree with the juvenile court the mother has not adequately addressed her blaming behavior and inability to protect her children from harm—despite the services offered and received.  We find grounds for termination of the mother's parental rights exist as to all of the children, and we affirm the juvenile court's ruling.

The father argues he has participated in therapy and the ordered psychosexual evaluation and completed a class on the effects of sexual abuse on children.  He asserts with additional therapy he could make the progress necessary for E.R. and B.R. to be returned to his care.[4]  The court found: "[O.R.] has not acknowledged or addressed his sexual abuse of the older children.  He was provided a psychosexual evaluation, therapy, and education through Darkness to Light.  [He] continues to present a danger of sexual abuse to all of the children."

The father's psychosexual evaluation strongly recommended he have "no unsupervised time with minors" and noted it was unlikely an average person would be able to keep the children safe if he wanted contact.  The father denied any wrongdoing as to the older four children throughout the entirety of the case, and his therapist noted further therapy would be pointless in light of the father's stance.  *See In re S.O.*, 967 N.W.2d 198, 209 (Iowa Ct. App. 2021) ("Before any meaningful change can take place, a parent must acknowledge and recognized that abuse

---

[4] O.R. also argues the mother has received the necessary services to correct the cause for removal and the children could be returned to her.  He does not have standing to assert an argument on her behalf to avoid termination of his own parental rights.  *In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007).

occurred."). He has been looking for a new therapist, but with no recognition of the work that needs to be done, further therapy is unlikely to correct the circumstance leading to the children's adjudication. We find a ground for termination of O.R.'s parental rights to E.R. and B.R. has been established under section 232.116(1)(d).

*Best interests.* The father asserts termination was not in the children's best interests due to their strong bond with him. Under our statutory best-interests framework, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). Consideration of these factors and the father's lack of accountability or progress provides clear and convincing evidence termination of his parental rights is in the children's best interests. We affirm.

**AFFIRMED ON BOTH APPEALS.**